MORGAN, LEWIS & BOCKIUS LLP
John S. Battenfeld, Bar No. 119513
Anahi Cruz, Bar No. 324326
Charles E. Murphy II, Bar No. 364334
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: +1.213.612.2500
Fax: +1.213.612.2501
john.battenfeld@morganlewis.com
anahi.cruz@morganlewis.com
charles.murphy@morganlewis.com

Attorneys for Defendants
NEW YORK LIFE INSURANCE COMPANY, NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, NYLIFE INSURANCE COMPANY OF ARIZONA, and NYLIFE SECURITIES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLGA BROWN, FERNANDO CORCUCHIA, WILLIAM MOORE, MICHAEL SANDOVAL, TOM SCIARA, and SAMMUEL VALDEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NEW YORK LIFE INSURANCE COMPANY, a New York corporation; NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, a Delaware corporation; NYLIFE INSURANCE COMPANY OF ARIZONA, an Arizona corporation; NYLIFE SECURITIES, LLC, a Delaware limited liability company; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 3:26-cv-05141-JSC<br><br>Hon. Jacqueline Scott Corley<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFFS TO ARBITRATION OF INDIVIDUAL CLAIMS, DISMISS CLASS CLAIMS, AND STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with Declaration of Craig Fluker in Support; Declaration of Nicholas Blahovec in Support; and [Proposed] Order]*<br><br>Date: October 1, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8–19th Floor |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 3
II. FACTUAL BACKGROUND ..... 3
A. Plaintiffs Brown, Moore, Sandoval, Sciara, and Valdez Contracted with New York Life. ..... 4
B. Plaintiff Corcuchia Contracted with New York Life. ..... 6
C. Plaintiffs Each Agreed to Arbitrate Their Claims Against New York Life on an Individual Basis. ..... 7
D. Plaintiffs Filed This Class Action Asserting Individual Claims That Must Be Individually Arbitrated. ..... 9
III. LEGAL ARGUMENT ..... 9
A. The FAA Requires Enforcement of Plaintiffs' Arbitration Agreements. ..... 9
B. The FAA Applies to Plaintiffs' Arbitration Agreements. ..... 10
C. The Arbitration Agreements Are Valid, Binding, and Enforceable. ..... 10
1. Plaintiffs Agreed to Arbitrate Their Employment-Related Claims. ..... 10
2. The Arbitration Agreements Encompass Plaintiffs' Individual Claims. ..... 12
D. Plaintiffs' Claims Must Be Compelled to Arbitration Under the FAA Because Their Arbitration Agreements Are Enforceable. ..... 12
1. The Arbitration Agreements Are Enforceable. ..... 12
*a.* The Arbitration Agreements Are Not Substantively Unconscionable. ..... 13
*b.* Any Procedural Unconscionability is Minimal. ..... 15
2. The Court Can Sever Any Term Deemed Unconscionable and Enforce the Remainder of the Arbitration Agreements. ..... 16
E. The Arbitration Agreements Waive Plaintiffs' Attempted Class Claims. ..... 16
F. This Action Must Be Stayed Pending Completion of Arbitration ..... 16
IV. CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajamian v. CantorCO2e*,
203 Cal. App. 4th 771 (2012) .... 15

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) .... 10

*American Exp. Co. v. Italian Colors Restaurant*,
570 U.S. 228 (2013) .... 9

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
24 Cal. 4th 83 (2000) .... 13, 14, 15

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .... 1, 3, 13, 16

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .... 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .... 10

*Cocom v. ABM Aviation, Inc.*,
179 F. 4th 1168 (9th Cir. June 23, 2026) .... 13, 15

*Cox v. Ocean View Hotel Corp.*,
533 F. 3d 1114 (9th Cir. 2008) .... 10

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .... 1, 3, 9, 15, 16

*Giuliano v. Inland Empire Personnel, Inc.*,
149 Cal. App. 4th 1276 (2007) .... 10

*Harris v. TAP Worldwide, LLC*,
248 Cal. App. 4th 373 (2016) .... 11

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .... 10

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .... 10

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
74 Cal. App. 4th 1105 (1999) .... 15

*Little v. Auto Stiegler, Inc.*,
29 Cal. 4th 1064 (2003) .......... 9

*Madden v. Kaiser Found. Hosps.*,
17 Cal. 3d 699 (1976) .......... 9

*Malone v. Super. Ct.*,
226 Cal. App. 4th 1551 (2014).......... 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).......... 9, 12

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013).......... 16

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012) .......... 10, 13

*Radcliff v. San Diego Gas & Elec. Co.*,
2020 WL 6395677 (S.D. Cal. Nov. 2, 2020) .......... 15

*Ramirez v. Charter Comms., Inc.*,
16 Cal. 5th 478 (2024) .......... 16

*Roman v. Superior Court*,
172 Cal. App. 4th 1462 (2009).......... 16

*Rosenthal v. Great Western Financial Securities Corporation*,
14 Cal. 4th 394 (1996) .......... 10

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 3, 16

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016).......... 9

*United Transp. Union v. S. Cal. Rapid Transit Dist.*,
7 Cal. App. 4th 804 (1992).......... 12

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
485 F. Supp. 3d 1168 (N.D. Cal. 2020) .......... 10

**Statutes**

Federal Arbitration Act .......... *passim*

**Other Authorities**

AAA Employment Arbitration Rule 13 .......... 14

AAA Employment Arbitration Rule 21 .......... 14

AAA Employment Arbitration Rule 45 ........ 14

AAA Employment Arbitration Rule 46 ........ 14

FINRA Rule 13400 ........ 14

FINRA Rule 13506 ........ 14

FINRA Rule 13902 ........ 14

FINRA Rule 13904 ........ 14

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE** that on October 1, 2026, at 10:00 a.m., or as soon thereafter as may be heard in Courtroom 8–19th Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants New York Life Insurance Company, New York Life Insurance and Annuity Corporation, NYLIFE Insurance Company of Arizona, and NYLIFE Securities, LLC (together, "New York Life"), move this Court for an Order compelling Plaintiffs Olga Brown, Fernando Corcuchia, Tyler Miranda, Michael Sandoval, Tom Sciara, and Sammuel Valdez ("Plaintiffs") to arbitrate their individual claims, dismiss their class claims, and to stay this action pending resolution of the arbitrations.

Under various binding arbitration agreements, Plaintiffs agreed to arbitrate all individual disputes related to their contractual relationships with New York Life and they waived their ability to bring class action claims. However, contrary to their agreements, Plaintiffs have brought individual and class action wage-and-hour claims against New York Life in their court complaint. The arbitration agreements, including the class action waivers, are valid, binding, and legally enforceable under the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 *et seq.*; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 497–98, 524–25 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). As a result, the Court must compel Plaintiffs to arbitrate their individual claims, dismiss the class claims, and stay this action pending arbitration.

This Motion is based on this Notice of Motion and Motion, the Declaration of Nicholas Blahovec and all exhibits thereto, the Declaration of Craig Fluker and all exhibits thereto, the record in this action, and any other evidence as may be presented by New York Life at or before the hearing on this Motion.

Dated: August 20, 2026

MORGAN, LEWIS & BOCKIUS LLP

By */s/ Anahi Cruz*
John S. Battenfeld
Anahi Cruz
Charles E. Murphy II

*Attorneys for Defendants*
NEW YORK LIFE INSURANCE COMPANY, NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, NYLIFE INSURANCE COMPANY OF ARIZONA, and NYLIFE SECURITIES LLC

## I. INTRODUCTION

As terms of their various agent contracts (whether independent contractor or employee) with Defendants New York Life Insurance Company, New York Life Insurance and Annuity Corporation, NYLIFE Insurance Company of Arizona, and NYLIFE Securities LLC (together, "New York Life" or "Defendants"), Plaintiffs Olga Brown ("Brown"), Fernando Corcuchi ("Corcuchia"), William Moore ("Moore"), Michael Sandoval ("Sandoval"), Tom Sciara ("Sciara"), and Sammuel Valdez ("Valdez") (together, "Plaintiff's") each agreed to arbitrate on an individual basis all alleged employment claims related to their relationship with New York Life. However, in violation of their arbitration agreements (the "Arbitration Agreements"), Plaintiffs filed a multi-plaintiff class action complaint in court for purported employment-related wage-and-hour violations against Defendants (the "Complaint").

The Federal Arbitration Act ("FAA") reflects "a liberal federal policy favoring arbitration" and requires courts to "rigorously enforce" arbitration agreements according to their terms. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (citations omitted). All agreements here require arbitration of each Plaintiff's individual claims. Each Plaintiff also waived their ability to bring class action claims. The Court must therefore compel Plaintiffs to arbitrate their individual claims alleged in the Complaint, and the improper class claims must be dismissed.

The Court must also stay this action under the FAA. As the U.S. Supreme Court held, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

Accordingly, Defendants request that this Court compel arbitration of Plaintiffs' individual claims alleged in the Complaint, dismiss the class claims, and stay this action pending completion of Plaintiffs' individual arbitrations.

## II. FACTUAL BACKGROUND

New York Life is a nationwide insurance company headquartered in New York, New York. Declaration of Nicholas Blahovec ("Blahovec Decl.") ¶ 3. New York Life agents, including

Plaintiffs Brown, Corcuchia, Moore, Sandoval, Sciara, and Valdez when they were contracted agents, are authorized to solicit and submit applications for insurance policies, annuity contracts and other products issued by New York Life. *Id.* Agents located throughout the country submit applications on behalf of clients located throughout the country to New York Life, which are then processed and evaluated in New York. *Id.* Clients who purchase New York Life's products regularly communicate with and receive support related to their products from New York Life employees located outside of California using the telephone and the internet. *Id.*

### A. <u>Plaintiffs Brown, Moore, Sandoval, Sciara, and Valdez Contracted with New York Life.</u>

At the beginning of their relationships with New York Life, Plaintiffs Brown, Moore, Sandoval, Sciara, and Valdez each electronically executed several contracts with Defendants using DocuSign, including an "Introductory Contract" (also called a "PTAS Contract" in the Complaint) and an "Agent's Contract" supplemented and modified concurrently by a "Training Allowance Subsidy Plan Agreement ("TAS Agreement"). *Id.* at ¶¶ 5–9. These agreements set forth the terms of agent compensation, including how commission payments are earned. *Id.* These Plaintiffs all admit that they worked under and signed these Contracts. Complaint, ¶¶ 16–20. Although there is no basis for Plaintiffs to attempt to deny that binding contracts were formed, New York Life provides additional facts below out of an abundance of caution.

After receiving offers to contract with New York Life as Agents, candidates such as Plaintiffs must complete a Request for an Agent's Contract indicating that they have reviewed and agreed to the terms and conditions of the contract(s) requested. Blahovec Decl. at ¶ 12. Candidates must agree to a contract's terms by executing the contracts, usually using a third-party software platform, "DocuSign," to execute and agree to the contract with an electronic signature. *Id.*

DocuSign sends the documents to the candidate to access, review, and sign via email, which contains a link to the documents. *Id.* Only the person who has access to the email can access, review, and sign the documents. *Id.* If someone using an email address other than the intended recipient attempts to follow the link in the email to access, review, and sign documents, or if the candidate forwards the link to attempt to access, review, and sign documents from a different email address,

DocuSign displays an error message, and the person cannot proceed further. *Id.*

DocuSign requires that New York Life upload the documents to be signed by a candidate to the internet, designate signature fields, and specify the candidate's email address for electronic delivery. *Id.* at ¶ 13. DocuSign then electronically delivers the documents to the candidate and prompts the candidate to review each document and sign in the pre-designated signature fields. *Id.* Before the candidate may electronically sign, the candidate must read and agree to the terms of a Consumer Disclosure regarding consenting to electronic delivery of all notices, disclosures, authorizations, acknowledgements, and other documents from New York Life. *Id.* Upon accepting the disclosure, the candidate is prompted to sign each and every pre-designated signature field in the contracting document(s) and must take affirmative action to input his or her electronic signature into each field. *Id.* at ¶ 14. After signing each signature field, the candidate must click a "FINISH" button to indicate their completion of the execution of the contracting documents before DocuSign accepts the document as executed by the candidate and returns it to New York Life. *Id.* DocuSign records the date and time the documents are executed and sends a copy to both sender and signer. *Id.* Upon a candidate signing a contract, an authorized representative of New York Life must countersign the contract to make it effective. *Id.* at 20.

Brown provided the email address olgacbrown@me.com for onboarding with Defendants, and a member of New York Life's contracting team sent her a DocuSign request, including an Introductory Contract and TAS Agreement to that email address. *Id.* ¶ 15. DocuSign records indicate that Brown accessed the sent records and electronically signed her Introductory Contract on February 7, 2025, and electronically signed her TAS Agreement on April 8, 2025. *Id.* New York Life countersigned and made effective Brown's Introductory Contract on February 11, 2025, and countersigned and made effective her TAS Agreement on April 8, 2025. *Id.* at ¶ 20.

Moore provided the email address wgregm@gmail.com for onboarding with Defendants, and a member of New York Life's contracting team sent him a DocuSign request, including an Introductory Contract and TAS Agreement to that email address. *Id.* at ¶ 16. DocuSign records indicate that Moore accessed the sent records and electronically signed an Introductory Contract on December 20, 2024, and electronically signed a TAS Agreement on April 7, 2025. *Id.* New York

Life countersigned and made effective Moore's Introductory Contract on February 7, 2025, and countersigned and made effective his TAS Agreement on April 7, 2025. *Id.* at ¶ 21.

Sandoval provided the email address michael.sandoval2123@gmail.com for onboarding with Defendants, and a member of New York Life's contracting team sent him a DocuSign request, including an Introductory Contract and TAS Agreement to that email address. *Id.* at ¶ 17. DocuSign records indicate that Sandoval accessed the sent records and electronically signed an Introductory Contract on June 17, 2023, and electronically signed a TAS Agreement on November 28, 2023. *Id.* New York Life countersigned and made effective Sandoval's Introductory Contract on September 1, 2023, and countersigned and made effective his TAS Agreement on November 28, 2023. *Id.* at ¶ 22.

Sciara provided the email address tomsciara@gmail.com for onboarding with Defendants, and a member of New York Life's contracting team sent him a DocuSign request, including an Agent's Contract and a TAS Agreement to that email address. *Id.* at ¶ 18. DocuSign records indicate that Sciara accessed the sent records and electronically signed both an Agent's Contract and TAS Agreement on August 9, 2021. *Id.* New York Life countersigned and made effective Sciara's TAS Agreement on August 9, 2021, and countersigned and made effective his Agent's Contract on September 1, 2023. *Id.* at ¶ 23.

Valdez provided the email address sammuelvaldez7@gmail.com for onboarding with Defendants, and a member of New York Life's contracting team sent him a DocuSign request, including a TAS Agreement and Agent's Contract to that email address. *Id.* at ¶ 19. DocuSign records indicate that Valdez accessed the sent records and electronically signed a TAS Agreement and Agent's Contract on April 1, 2022. *Id.* New York Life countersigned and made effective Valdez's TAS Agreement and Agent's Contract on April 1, 2022. *Id.* at ¶ 24.

Defendants' records show that Plaintiffs each received compensation pursuant to the terms of their respective agreements. *Id.*

**B. <u>Plaintiff Corcuchia Contracted with New York Life.</u>**

Before the relevant period covered by the claims in this action, Corcuchia was subject to a PTAS Contract and a TAS Agreement. Complaint, ¶ 21. Corcuchia subsequently became a Partner

in 2017. Declaration of Craig Fluker ("Fluker Decl.") ¶ 3. Corcuchia was presented the Partner's Employment Agreement for his signature. *Id.* Corcuchia executed a Partner's Employment Agreement with New York Life Insurance Company by handwritten signature dated December 12, 20217. *Id.* at ¶ 4. An authorized representative of New York Life Insurance Company also signed the Partner's Employment Agreement. *Id.* at ¶ 3.

### C. <u>Plaintiffs Each Agreed to Arbitrate Their Claims Against New York Life on an Individual Basis.</u>

The Introductory Contracts, TAS Agreements, and Agent's Contracts signed by Plaintiffs other than Corcuchia contain identical arbitration provisions requiring each of their claims to be resolved by final and binding arbitration.[1] The Agreements state in relevant part:

> The [Plaintiff] and New York Life (which includes New York Life, NYLIFE Securities LLC and their affiliates, successors, employees and agents) agree that ***any dispute, claim***, request for equitable relief, or controversy ***arising between them***, including but not limited to those alleging wrongful or unlawful discharge, or employment discrimination or harassment based on sex, race, age, disability, or status in any other group or class, or retaliation, ***in violation of any federal, state or local statute***, regulation, common law or rule (hereinafter "the Claim") . . . shall be resolved ***by a final and binding arbitration proceeding*** . . . administered by the Financial Industry Regulatory Authority ("FINRA") in accordance with its applicable arbitration rules ("FINRA's arbitration rules") then in effect.
>
> . . .
>
> In the event that a Claim is not arbitrable under FINRA's arbitration rules, or FINRA refuses to arbitrate the Claim, the [Plaintiff] and New York Life agree that the Claim, as well as any dispute as to whether such Claim is arbitrable, shall be resolved by a sole arbitrator in a final and binding arbitration proceeding . . . administered by the American Arbitration Association (hereinafter "AAA") in accordance with its rules for the resolution of employment disputes then in effect.

Blahovec Decl., Exs. A, C, I at ¶ 21; B, D, G, J at ¶ 19; H at ¶ 23 (emphasis added).

The Partner's Employment Agreement signed by Plaintiff Corcuchia has substantially the same arbitration clause:

> The Partner and New York Life (which includes New York Life, NYLIFE Securities LLC and. their affiliates, successors, employees and agents) agree that ***any dispute, claim,*** request for equitable relief, ***or controversy arising between***

[1] For ease of reference, the arbitration provisions contained in the Introductory Contracts, TAS Agreements, Agent's Contracts, and Partner's Employment Agreement executed by Plaintiffs shall be referred to as the "Arbitration Agreements."

> ***them,*** including but not limited to those alleging employment discrimination or harassment based on sex, race, age, disability, or status in any other group or class, or retaliation, ***in violation of any federal, state or local statute***, regulation or rule (hereinafter "the Claim"), as well as any dispute as to whether such Claim is arbitrable (except as set forth in Section 6(e)), shall be resolved ***by a final and binding arbitration*** proceeding administered by the Financial Industry Regulatory Authority ("FINRA") in accordance with its applicable arbitration rules ("FINRA's arbitration rules"). then in effect. These rules may be found at www.finra.org.
>
> . . .
>
> In the event that a claim is not arbitrable under FINRA's arbitration rules, or FINRA refuses to arbitrate the Charm, the Partner and New York Life agree that, the Claim, as well as any dispute as to whether such Claim Is arbitrable, shall (except as set forth in Section 6(e)) be resolved by a sole arbitrator in a final and binding arbitration proceeding administered by the American Arbitration Association (hereinafter "AAA") In accordance with its rules for the resolution of employment disputes then in effect. These rules may be found at www.adr.org.

*Id.,* Ex. K at ¶ 6 (emphasis added).

The Arbitration Agreements specifically include as arbitrable those claims "alleging a violation of a federal, state or local wage and hour statute, regulation or rule…" Blahovec Decl., Exs. A, C, I at ¶ 21(f); B, D, G, J at ¶ 19(f); H at ¶ 23(f). They require that arbitrable claims "be brought in a party's individual capacity, and not as a plaintiff or class representative … in any purported class… proceeding…" Blahovec Decl., Exs. A, C, I at ¶ 21(d); B, D, G, J at ¶ 19(d); H at ¶ 23(d); K at ¶6(e). Plaintiffs' Agreements also expressly provide that "Claims may ***not be joined or consolidated in arbitration with claims brought by other individuals***, … unless agreed to in writing by all parties." Blahovec Decl., Exs. A, C, I at ¶ 21(e); B, D, G, J at ¶ 19(e); H at ¶ 23(e); K at ¶ 6(f). (emphasis added). Thus, Plaintiffs' individual claims must be brought in arbitration.

At the conclusion of the Arbitration Agreements and directly above each Plaintiff's signature blocks in bold typeface is an express acknowledgement stating:

> **I acknowledge that I have received and read or have had the opportunity to read this arbitration agreement . . . I understand that this arbitration agreement requires that disputes that involve the matters subject to the agreement be submitted to . . . arbitration pursuant to the arbitration agreement rather than to a judge and jury in court.**

Blahovec Decl., Exs. A, C, I at p. 10; B, D, G, J, K at p. 7; H at p. 15 (emphasis in original).

//

### D. Plaintiffs Filed This Class Action Asserting Individual Claims That Must Be Individually Arbitrated.

Despite their agreements to arbitrate in conjunction with class action waivers, Plaintiffs filed a "Class Action Complaint" that improperly attempts to bring wage-and-hour class action claims in court. Specifically, their Class Action Complaint alleges individual and class claims for (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to separately compensate paid rest period time; (6) failure to reimburse necessary business expenditures; (7) failure to furnish accurate itemized wage statements; (8) waiting time penalties; and (9) a derivative claim for unfair competition. Because Plaintiffs are each required by their specific Arbitration Agreement to arbitrate their claims on an individual, non-class basis, New York Life moves this Court to compel Plaintiffs to arbitrate their individual claims, to dismiss their class claims, and to stay this action pending the completion of arbitration.

## III. LEGAL ARGUMENT

### A. The FAA Requires Enforcement of Plaintiffs' Arbitration Agreements.

Federal law has a strong public policy in favor of arbitration as an expeditious and cost-effective way to resolve disputes. *Epic Sys. Corp.*, 584 U.S. at 505 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).[2] In *American Exp. Co. v. Italian Colors Restaurant*, the Supreme Court reinforced that the FAA "reflects the overarching principle that arbitration is a matter of contract . . . [and that] courts must 'rigorously enforce' arbitration agreements according to their terms[.]" 570 U.S. 228, 232 (2013) (internal quotations and citations omitted). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

[2] California's public policy also strongly favors arbitration agreements, including for employment disputes. *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1079 (2003); *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 706-07 (1976) ("[A]rbitration has become an accepted and favored method of resolving disputes . . . praised by the courts as an expeditious and economical method of relieving overburdened civil calendars.").

**B. <u>The FAA Applies to Plaintiffs' Arbitration Agreements.</u>**

In *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995), the Supreme Court held that the FAA's coverage of agreements "involving commerce" is synonymous with the term "affecting commerce," signifying Congress' intent to "exercise [its] commerce power to the full." *Id*. Here, Plaintiffs' Arbitration Agreements with New York Life (which all reference the FAA) affected commerce because New York Life's nationwide business involves interstate commerce. Blahovec Decl., ¶ 3; *see Giuliano v. Inland Empire Personnel, Inc.,* 149 Cal. App. 4th 1276, 1286 (2007) (the FAA's interstate commerce requirement was met "[g]iven [employer's] undisputed interstate business activities [operating in California and Arizona] and the broad construction we must give to the phrase 'evidencing a transaction involving commerce.'"); *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 485 F. Supp. 3d 1168, 1177–78 (N.D. Cal. 2020) (holding an insurance broker's business of recommending, offering, and selling insurance products on a nationwide basis and contracting with associates to sell broker's products in various states to "involve commerce," making FAA applicable).

**C. <u>The Arbitration Agreements Are Valid, Binding, and Enforceable.</u>**

When considering a motion to compel arbitration, the Court must answer two questions: (1) does a valid agreement to arbitrate exist; and, if it does, (2) does the arbitration agreement encompass the dispute or claims at issue? *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also Cox v. Ocean View Hotel Corp.*, 533 F. 3d 1114, 1119 (9th Cir. 2008). Here, the answer to both questions is "yes," and the Court must compel arbitration.

**1. Plaintiffs Agreed to Arbitrate Their Employment-Related Claims.**

Though New York Life must prove that the parties entered into an agreement to arbitrate the claims at issue, its burden is light—New York Life is required to show only that an agreement exists by a preponderance of the evidence. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002); *Rosenthal v. Great Western Financial Securities Corporation,* 14 Cal. 4th 394, 413 (1996); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Under California law, "[a] party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement" or "implied in fact[.]" *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,

55 Cal. 4th 223, 236 (2012). "Under California law, assent to an offer can occur either by way of performance under the contract or the acceptance of consideration." *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 384 (2016) (finding employee had agreed to be bound by arbitration agreement found in employee handbook despite employee's contention he had never signed any such agreement).

Here, New York Life met its burden by providing this Court with true and correct copies of each applicable Arbitration Agreement, and explaining how it was provided to, and then accepted by, each Plaintiff. Blahovec Decl. ¶¶ 5–24, 30, Exs. A-J; Fluker Decl. ¶¶ 2-3, Ex. A. Plaintiffs' electronic signatures on their respective agent contracts—containing arbitration provisions—formed an arbitration agreement between the parties. Indeed, the Complaint admits that Plaintiffs signed various agreements that contain arbitration agreements. [need cite] Corcuchia signed his Partner's Employment Agreement by hand, which contained a materially identical arbitration provision to the rest of the Arbitration Agreements at issue. The Arbitration Agreements expressly provide that the parties must submit "any dispute, claim, request for equitable relief, or controversy arising between them," including any claims "alleging a violation of federal, state or local wage and hour statute, regulation or rule …" to a final and binding arbitration on an individual basis. Blahovec Decl., Exs. A, C, I at ¶ 21; B, D, G, J at ¶ 19; H at ¶ 23; K at ¶ 6. Accordingly, Plaintiffs expressly agreed to arbitrate their individual claims pursuant to their respective Arbitration Agreements.

New York Life also presented evidence that each Plaintiff (including Corcuchia) worked under and received monetary benefits set forth in the agreement he or she signed, including commissions pursuant to the terms of his or her agreements after the agreements were executed. *See Marenco*, 233 Cal. App. 4th at 1420 ("Our determination [that plaintiff impliedly consented to arbitration agreement] is consistent with the established principle that '[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.'") (citations omitted). Thus, even if Plaintiffs had not signed the agreements and admitted they signed them (which they did), Plaintiffs impliedly agreed to arbitrate their claims against New York Life by fulfilling contractual

duties and accepting commissions under the Introductory Contracts, TAS Agreements, Agent's Contracts, and (as to Corcuchia) Partner's Employment Agreement.

Accordingly, New York Life established the existence of an agreement to arbitrate.

**2. The Arbitration Agreements Encompass Plaintiffs' Individual Claims.**

When an enforceable arbitration agreement exists between two parties, there is a presumption of arbitrability as to all disputes between them. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also United Transp. Union v. S. Cal. Rapid Transit Dist.*, 7 Cal. App. 4th 804, 808 (1992). Such a presumption is particularly applicable where the arbitration agreement employs broad language to render any and all claims or differences subject to arbitration. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). In such cases, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (internal quotation marks and citation omitted).

Here, it is undeniable that all of Plaintiffs' claims fall under the scope of the Arbitration Agreements. The Agreements each expressly provide that Plaintiffs and New York Life agree to arbitrate "any" dispute or claim "arising between them," including "violation of any federal, state or local statute," in an individual final and binding arbitration, including specifically any claims "alleging a violation of federal, state or local wage and hour statute, regulation or rule . . . ." Blahovec Decl., Exs. A, C, I at ¶ 21; B, D, G, J at ¶ 19; H at ¶ 23; K at ¶ 6. The Agreements also require arbitration of "any dispute as to whether such claim is arbitrable . . . ." *Id.* The Complaint asserts wage and hour claims arising under the California Labor Code and Business & Professions Code based on Plaintiffs employment or alleged employment with New York Life. Accordingly, Plaintiffs' individual claims fall squarely within the scope of their Arbitration Agreements.

**D. <u>Plaintiffs' Claims Must Be Compelled to Arbitration Under the FAA Because Their Arbitration Agreements Are Enforceable.</u>**

**1. The Arbitration Agreements Are Enforceable.**

Although the FAA allows limited grounds to challenge an arbitration agreement "as exist in law or in equity for the revocation of any contract," this savings clause does not "preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *Concepcion*,

563 U.S. at 343. Determinations of unconscionability are made pursuant to California law, and "[t]he party resisting arbitration bears the burden of proving unconscionability." *Pinnacle*, 55 Cal. 4th at 247; *see also Cocom v. ABM Aviation, Inc.*, 179 F. 4th 1168, 1173 (9th Cir. June 23, 2026).

Unconscionability has both a substantive and a procedural element, and an agreement to arbitrate is unenforceable only where ***both*** substantive and procedural unconscionability exist. *See Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000) (both forms of unconscionability must be present to defeat contract formation); *see also Malone v. Super. Ct.*, 226 Cal. App. 4th 1551, 1570 (2014) (contract of adhesion is some evidence of procedural unconscionability, but that must be accompanied by a high showing of substantive unconscionability in order to render a contract unenforceable). Courts assessing unconscionability use a "sliding scale" – the less procedurally unconscionable an agreement, the more evidence of substantive unconscionability is required to find it unenforceable, and vice versa. *Armendariz*, 24 Cal. 4th at 114; *Pinnacle*, 55 Cal. 4th at 247; *Cocom*, 179 F. 4th at 1173 ("Proving an unconscionability defense requires establishing both procedural and substantive unconscionability"). Here Plaintiffs did not identify any alleged unconscionable provisions in meet and confer communications about the arbitration agreements, and there are none.

*a.* **<u>The Arbitration Agreements Are Not Substantively Unconscionable.</u>**

Here, there is no basis to find substantive unconscionability. "The lack of substantive unconscionability is dispositive, so [the Court] need not address [the Company's] arguments about procedural unconscionability." *Cocom*, 179 F. 4th at 1173.

Under *Armendariz*, a mandatory employment arbitration agreement is valid when it: (1) provides for neutral arbitrators; (2) provides for more than minimal discovery; (3) provides for a written award; (4) provides for all of the types of relief that otherwise would be available in court; (5) does not require the individuals to bear unreasonable expenses, arbitration forum costs, or other costs that they would not be required to bear if they brought their action in court; and (6) provides a mutuality in enforcement. *See Armendariz*, 24 Cal. 4th at 102–112, 117. Here, the Arbitration Agreements satisfy all six requirements.

*First*, the Arbitration Agreements provide for a neutral arbitrator, as arbitration is to take place under either FINRA or AAA arbitration rules (the AAA rules apply if a claim is not arbitrable under FINRA's rules), which both require that an arbitrator be neutral and provide a rank-and-strike selection process in the event the parties cannot mutually agree to an arbitrator. *See* Blahovec Decl., Exs. A, C, I at ¶ 21; B, D, G, J at ¶ 19; H at ¶ 23; K at ¶ 6; FINRA Rule 13400; AAA Employment Arbitration Rule 13.

*Second*, the parties are entitled to discovery under the relevant FINRA and AAA rules. *See* Blahovec Decl., Exs. A, C, I at ¶ 21; B, D, G, J at ¶ 19; H at ¶ 23; K at ¶ 6; FINRA Rule 13506; AAA Employment Arbitration Rule 21. In this regard, the court in *Armendariz* "infer[red] that when parties agree to arbitrate statutory claims, they also implicitly agree, absent express language to the contrary, to such procedures as are necessary to vindicate that claim." 24 Cal. 4th at 106.

*Third*, the Arbitration Agreements provide for a written award through their adoption of the FINRA or AAA rules, which both require arbitrators to issue written awards under the relevant rules. *See* FINRA Rule 13904 ("All awards shall be in writing . . . ."); AAA Employment Arbitration Rule 45 ("Any award shall be in writing . . . [and] shall provide the written reasons for the decision . . . .").

*Fourth*, the Arbitration Agreements do not limit the remedies that Plaintiffs may seek for their individual claims.

*Fifth*, Plaintiffs are not subject to any unreasonable costs. Under the Arbitration Agreements, for certain claims including wage and hour claims, New York Life assumes any cost or expense for arbitration for claims that New York Life would be required to pay for under law and "any other type of cost or expense that the [Plaintiff] would not be required to bear if the Claims were brought in court." Blahovec Decl., Exs. A, C, I at ¶ 21(f); B, D, G, J at ¶ 19(f); H at ¶ 23(f); K at ¶ 6(g). The FINRA and AAA rules also allow the arbitrator to grant attorneys' fees and costs to the prevailing party to the same extent a court could award. *Id.*; FINRA Rule 13902; AAA Employment Arbitration Rule 46.

*Sixth*, and finally, arbitration is bilateral and mandatory for claims that arise between Plaintiffs and New York Life. *See* Blahovec Decl., Exs. A, C, I at ¶ 21(a); B, D, G, J at ¶ 19(a); H

at ¶ 23(a) ;K at ¶ 6(a) ("The [Plaintiff] and New York Life [defined to include all Defendants in this Action] . . . agree that any dispute, claim, request for equitable relief, or controversy arising between them . . . shall be resolved by a final and binding arbitration proceeding. . . .").

Accordingly, the Arbitration Agreements satisfy each of the *Armendariz* requirements and cannot be found substantively unconscionable. Because there is no basis to find that the Arbitration Agreement is substantively unconscionable, this Court need not even reach or consider procedural unconscionability. In the absence of substantive unconscionability, the arbitration agreement must be enforced. *Armendariz*, 24 Cal. 4th at 113–14; *Cocom*, 179 F. 4th at 1173.

*b.* **<u>Any Procedural Unconscionability is Minimal.</u>**

Plaintiffs may assert that the Arbitration Agreements are procedurally unconscionable contracts of adhesion because they were a condition of their employment or other contractual relationships with New York Life, but these types of arbitration agreements are fully enforceable under black letter law. Indeed, the agreements enforced in *Epic Systems* were considered contracts of adhesion. *See Epic Sys. Corp.*, 584 U.S. at 531–32, n.2. *See also Radcliff v. San Diego Gas & Elec. Co.*, 2020 WL 6395677, at *4 (S.D. Cal. Nov. 2, 2020) ("[C]ases uniformly agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis."); *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1122-1123 (1999) ("a predispute arbitration agreement is not invalid merely because it is imposed as a condition of employment"); *Ajamian v. CantorCO2e*, 203 Cal. App. 4th 771, 796 (2012) ("The degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.").

There is no "oppression" or "surprise" here. The Arbitration Agreements signed by Plaintiffs include clear arbitration provisions, under a bolded or underlined heading reading "Arbitration." *See* Blahovec Decl., Exs. A, C, I at p. 10; B, D, G, J, K at p. 7; H at p. 15. Further, a bolded acknowledgment resides directly above the signature blocks in each agreement in bold font stating that Plaintiffs read or had the opportunity to read the Arbitration Agreements and understood "**that this arbitration agreement requires that disputes that involve the matters**

**subject to the agreement be submitted to . . . arbitration pursuant to the arbitration agreement . . . .**" *Id.*

Thus, any minimal procedural unconscionability arising from the Arbitration Agreement's mandatory nature does not render the Agreement unenforceable and here, there is no substantive unconscionability—much less the high degree of substantive unconscionability required to invalidate the Arbitration Agreement.

**2. The Court Can Sever Any Term Deemed Unconscionable and Enforce the Remainder of the Arbitration Agreements.**

Even if the Court determines that one or more provisions of the Arbitration Agreements is unconscionable (which it should not), it can sever them and enforce the remainder of the Agreements. *See Ramirez v. Charter Comms., Inc.*, 16 Cal. 5th 478, 513 (2024) ("[t]he 'strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement.'") (citing *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1477 (2009)).

**E. <u>The Arbitration Agreements Waive Plaintiffs' Attempted Class Claims.</u>**

It is well-settled that class action waivers in arbitration agreements governed by the FAA must be enforced. *Epic Sys.*, 584 U.S. at 502 (reaffirming enforceability of class and collective action waivers in employment arbitration agreements governed by the FAA); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1226 (9th Cir. 2013) ("Section 2 of the FAA, which under *Concepcion* requires the enforcement of arbitration agreements that ban class procedures, is the law of California and of every other state."); *Iskanian*, 59 Cal. 4th at 362 (holding that the FAA preempts California's previous rule barring class action waivers under certain circumstances). Because the FAA governs the agreement here, Plaintiffs must arbitrate their claims on an individual basis, and their waived class action claims must be dismissed.

**F. <u>This Action Must Be Stayed Pending Completion of Arbitration</u>**

Under the FAA, upon application of a party, a court "shall" stay further proceedings in a legal action if it finds that "any issue" in the case should be referred to arbitration under an agreement in writing for such arbitration. 9 U.S.C. §3. As the Supreme Court held in *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024): "When a district court finds that a lawsuit involves an

arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *See also, Woody v. Coinbase Global, Inc.*, 2024 WL 4532909, at *1 (9th Cir. Oct. 21, 2024) ("[Section 3] is mandatory: when a party requests a stay in a dispute subject to arbitration, the district court has no discretion to deny it."). Accordingly, the Court must stay this action pending completion of arbitration.

## IV. CONCLUSION

For the foregoing reasons, New York Life respectfully requests that this Court issue an order compelling Plaintiffs to arbitrate their individual claims, dismissing the class claims, and staying this case pending arbitration.

Dated: August 20, 2026

MORGAN, LEWIS & BOCKIUS LLP

By *[/s/ Anahi Cruz]*
John S. Battenfeld
Anahi Cruz
Charles E. Murphy II

*Attorneys for Defendants*
NEW YORK LIFE INSURANCE COMPANY, NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, NYLIFE INSURANCE COMPANY OF ARIZONA, and NYLIFE SECURITIES LLC