PAUL K. HAINES (SBN 248226)
phaines@haineslawgroup.com
FLETCHER W. SCHMIDT (SBN 286462)
fschmidt@haineslawgroup.com
ANDREW J. ROWBOTHAM (SBN 301367)
arowbotham@haineslawgroup.com
IAN T. MALLERY (SBN 359132)
imallery@haineslawgroup.com
HAINES LAW GROUP, APC
2155 Campus Drive, Suite 180
El Segundo, California 90245
Tel: (424) 292-2350
Fax: (424) 292-2355

JOSEPH TOJARIEH (SBN 265492)
jft@stonebrooklaw.com
STONEBROOK LAW
10250 Constellation Boulevard, Suite 2300
Los Angeles, California 90067
Tel: (310) 553-5533

Attorneys for Plaintiffs
OLGA BROWN, FERNANDO CORCUCHIA, WILLIAM MOORE, MICHAEL SANDOVAL, TOM SCIARA, and SAMMUEL VALDEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLGA BROWN, FERNANDO CORCUCHIA, WILLIAM MOORE, MICHAEL SANDOVAL, TOM SCIARA, and SAMMUEL VALDEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEW YORK LIFE INSURANCE COMPANY, a New York corporation; NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, a Delaware corporation; NYLIFE INSURANCE COMPANY OF ARIZONA, an Arizona corporation; NYLIFE SECURITIES LLC, a Delaware limited liability company; and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. 3:26-cv-05141-JSC<br><br>**DECLARATION OF FERNANDO CORCUCHIA IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS, DISMISS CLASS CLAIMS, AND STAY ACTION**<br><br>Date: October 1, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8, 19th Floor<br>Judge: Jacqueline Scott Corley<br><br>Filed: April 15, 2026<br>Removed: May 29, 2026<br>Trial Date: None Set |

# DECLARATION OF FERNANDO CORCUCHIA

I, Fernando Corcuchia, declare:

I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them under oath:

## I. BACKGROUND

1. I worked for New York Life out of its Greater San Francisco General Office, from about late 2010 until April 2023.

2. My work began under New York Life's Introductory Contract, which New York Life called the "PTAS" contract. During that introductory phase, New York Life treated me as an independent contractor while I completed its required onboarding and sold policies on a provisional basis.

3. I then signed a Training Allowance Subsidy Plan Agreement (the "TAS Agreement") and an Agent's Contract. New York Life's records reflect that I entered into both on or about December 17, 2010. From that point, New York Life treated me as a W-2 employee during what it called the "TAS" phase, which ran for three contract years.

4. After the TAS phase ended, I continued as an agent under the Agent's Contract and became what New York Life called an "established" agent. From that point forward, New York Life treated me as what it called a "statutory employee." My work did not change when my label changed.

5. New York Life promoted me to associate partner effective April 17, 2017, and then to Partner effective November 27, 2017. I signed the Partner's Employment Agreement on December 12, 2017, about two weeks after its stated effective date.

6. In about March 2022, I returned to the field as an agent under the Agent's Contract, and New York Life again treated me as a statutory employee. I remained an agent until my relationship with New York Life ended in April 2023.

7. The claims I am bringing in this case arise out of my work as a New York Life agent after I returned to the field, from about March 2022 until April 2023. I was

not a Partner during that period.

8. Prior to this lawsuit, I did not know what an arbitration agreement was or what arbitration involved. I have no legal training or education whatsoever.

## II. THE RECRUITING PROCESS

9. I was recruited to New York Life by Johnny Ng, a partner at New York Life. Mr. Ng and I already knew each other from chambers of commerce and networking events.

10. Mr. Ng courted me to leave my job and come to New York Life. He was persistent. He would call me about twice a week and take me out for coffee and lunch.

11. I met with two New York Life managers in person on multiple occasions. During those meetings, the managers wore expensive things and, more than that, talked about them. Mr. Ng told me how much money he was making and explained that what he wore was a result of how the compensation worked. I found it very enticing. I was told that if I followed New York Life's system it would be very easy for me to make $100,000 or more, and that I could eventually earn seven figures. However, that never happened and I averaged far less during the years that I worked for New York Life.

## III. THE ONBOARDING PAPERWORK

12. I understood that I had to complete New York Life's paperwork before I could start. Nothing could begin until all of my paperwork was done, and completing it was treated as the priority ahead of everything else. On December 17, 2010, I signed a form titled "Request for an Agent's Contract," on which I elected a Training Allowance Subsidy Plan Agreement.

13. New York Life did not use electronic signatures for any of my paperwork. I signed every document by hand, from my first contracts through the Partner's Employment Agreement I signed in December 2017. New York Life sat me at a table in a room with a staff member who moved through the documents with me page by page, telling me where my signature was needed and turning to the next page.

///

14. That staff member was not there to explain the documents to me. Her role was to make sure nothing was missed and that the paperwork was completed without slowing the process down. There was no meaningful explanation of what any of the documents said. What I was told was, in substance, that a signature was needed here, and then here, and then on the next page.

15. During the introductory phase, New York Life required me to complete training modules on its online training platform and to go through background checks. I was not paid during that phase. The Introductory Contract itself provides, at Section 13, that while it is in force "no compensation will be paid to the Agent," and that commissions on the business I submitted would become payable only under the terms of the TAS Agreement. That is what happened. New York Life accumulated the business I submitted and did not pay me on it until I reached a production benchmark and New York Life moved me into the TAS phase.

16. Throughout my time at New York Life, I understood that I could not move from one phase to the next unless I signed the documents New York Life put in front of me for that phase.

17. The documents New York Life asked me to sign were lengthy. Reading them was difficult because of the legal terminology they used.

## IV. THE PARTNER'S EMPLOYMENT AGREEMENT

18. When New York Life promoted me to Partner, the paperwork was handled the same way as before. I signed the Partner's Employment Agreement by hand and dated it by hand.

19. I have now reviewed the Partner's Employment Agreement attached as Exhibit A to the Declaration of Craig Fluker and as Exhibit K to the Declaration of Nicholas Blahovec.

## V. WHAT I WAS NOT TOLD ABOUT THE DOCUMENTS

20. No one at New York Life ever told me that I could negotiate any of the terms in any of the documents I was given to sign and, in fact, there was never any

negotiation.

21. No one at New York Life asked me whether I had questions or whether I wanted any changes to any of the documents. Every document was a preprinted form that was already complete when it was put in front of me, and the only thing I was asked to do was sign it.

22. No one at New York Life ever told me that I could decline any part of the paperwork and still work there. No one ever offered me a way to opt out of the arbitration provisions, and I did not know one existed.

23. No one at New York Life mentioned or explained arbitration to me during recruiting or onboarding, or at any point during my employment. No one separately told me that any packet contained arbitration provisions or explained what those provisions meant.

24. No one explained to me how arbitration works, what it costs, who pays for it, how long it takes, or what its procedures are. No one explained that by signing I would be giving up the right to have a judge or jury decide a dispute with New York Life or the right to bring or join a class action. No one explained any circumstances in which I could be required to share arbitration costs with New York Life.

25. No one told me that I could or should have a lawyer review the documents. I did not have a lawyer available to me, and I did not have anyone else with legal training or experience available to review the documents or guide me through the process.

26. No one gave me a copy of the FINRA arbitration rules or the American Arbitration Association employment arbitration rules that the documents refer to, and no one explained to me that those rules could change over time.

## VI. NEW YORK LIFE TERMINATED ME AND THEN SUED ME IN COURT

27. On March 22, 2023, New York Life sent me a letter terminating my Agent's Contract effective April 21, 2023, and immediately suspending my authority

to solicit business.

28. After I left, New York Life demanded that I repay commission advances it had paid me on business that had not been completed. Those advances were paid to me while I was still working there, on applications that were still being underwritten when New York Life terminated me. My partner and several other managers told me I would have time to finish that business after my termination. That never happened, the business reversed, and New York Life charged the advances back to my ledger.

29. I was unable to pay the commission advances in the way New York Life demanded. New York Life first wanted the entire balance in one payment. When I told it that was impossible, it proposed two installments, which I also could not pay. I offered to pay $500 a month, which was what I could manage. New York Life refused and demanded $5,000 a month.

30. At the time, I was unemployed. Because New York Life had terminated me, I could not get hired anywhere in the insurance industry. I had no income and no ability to pay what New York Life was demanding.

31. New York Life's in-house counsel handled the matter first. When I did not agree to its payment terms, New York Life retained outside attorneys to pursue the claim. Those attorneys wrote to me roughly every month threatening to sue me. They also spoke about deposing people, including my clients and former clients.

32. On July 26, 2024, New York Life filed a lawsuit against me in the Superior Court of California, County of San Francisco, captioned New York Life Insurance Company v. Fernando Corcuchia, Case No. CGC-24-616807. New York Life sued me for breach of contract and sought $145,665.78, plus prejudgment interest, attorneys' fees, costs, and expenses.

33. New York Life sued me on the same agent contracts that are at issue in this case. Its complaint alleges that, on or about January 11, 2011, New York Life and I entered into an Agent's Contract (Form N9) and a Training Allowance Subsidy Plan Agreement, and it sued me for breach of those contracts.

34. I could not afford a lawyer, so I represented myself. I filed an answer on October 9, 2024. The case was set for trial, the trial date was continued to December 2025, and the case remained pending against me for more than a year.

35. That period was extremely stressful for me. I did not want to be sued and I did not want to go to court. I was facing a lawsuit brought by a company with its own in-house lawyers and an outside law firm, and I had no money to defend myself.

36. In the end, I gave up. I told New York Life that I would do what I could to pay and that I did not have the money to represent myself. I decided that if a judgment was going to be entered against me anyway, I would take the judgment. On August 22, 2025, I signed a stipulation for judgment. On September 4, 2025, the court entered a stipulated judgment against me and in New York Life's favor for $100,000.

37. Under the stipulation, I agreed to pay at least $20,000 by December 31, 2025 and the full $100,000 by June 30, 2026.

38. At no point in any of this did anyone at New York Life ever mention arbitration to me. Not during the demands for repayment. Not in my dealings with New York Life's in-house counsel. Not from the outside attorneys who wrote to me every month. Not in the lawsuit. I was never served with or sent a demand for arbitration, and New York Life never asked to arbitrate its claim against me. New York Life took its own dispute with me to court.

39. New York Life did refer to a numbered paragraph of my Agent's Contract when it terminated me. Its March 22, 2023 letter gave notice of New York Life's intent to enforce Paragraph 23 of the Agent's Contract. Paragraph 23 is the section restricting what I could do after leaving. New York Life never mentioned Paragraph 24, which is the arbitration section.

## VII. THE ARBITRATION PROVISIONS

40. The Partner's Employment Agreement is a seven-page preprinted New York Life form. The first page shows the word "Partner," my name, an effective date, and a scheduled salary of $75,000 per year. Neither the title nor the first page says

anything about arbitration.

41. The arbitration provision is Section 6 of the agreement's eleven numbered sections. It begins on page 4 and runs through page 6. It was not presented to me as a separate agreement. It sits among sections addressing compensation, securities registration, confidential information, and restrictions on my activities after leaving.

42. New York Life wrote every word of this document before I ever saw it, and I had no role in preparing it.

43. New York Life has not attached to its motion any agreement covering the period my claims in this case arise from, which is my work as an agent from about March 2022 to April 2023. The only agreement New York Life has attached for me is the Partner's Employment Agreement, and my time as a Partner ended in about March 2022.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 3, 2026, at San Francisco, California.

DocuSigned by:

A4E8577063EB461...

FERNANDO CORCUCHIA