United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLGA BROWN, et al.,<br>Plaintiffs,<br>v.<br>NEW YORK LIFE INSURANCE COMPANY, et al.,<br>Defendants. | Case No. 3:26-cv-05141-JSC<br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br>Re: Dkt. No. 26 |

Six plaintiffs filed this putative class action in state court bringing wage and hour claims against their former employers New York Life Insurance Company, New York Life Insurance and Annuity Corporation, NYLIFE Insurance Company of Arizona, and NYLIFE Securities LLC. Defendants removed the action pursuant to the Class Action Fairness Act (CAFA) and then moved to compel arbitration pursuant to arbitration provisions in multiple contracts governing Plaintiffs' employment. (Dkt. No. 26.[1]) Because the parties' briefing indicated there was a dispute as to contract formation, the Court ordered the parties to meet and confer. (Dkt. No. 38.) The parties' status report indicates "the only remaining disputes as to arbitration contract formation are with respect to the TAS Agreements and Agent's contracts of Plaintiffs Brown and Moore." (Dkt. No. 40 at 3.) Having considered the parties' briefing and the relevant legal authority, and having had the benefit of oral argument on November 19, 2026, the Court GRANTS the motion to compel arbitration, DISMISSES the class claims, and STAYS the action pending arbitration.

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

## BACKGROUND

Plaintiffs Olga Brown, Fernando Corcuchia, William Moore, Michael Sandoval, Tom Sciara, and Sammuel Valdez were all employed as insurance agents with Defendants. As part of their employment and on-boarding, they were required to sign a variety of documents. Defendants move to compel arbitration based on arbitration provisions in four different documents: (1) the Introductory Contract (PTAS Contract); (2) the Training Allowance Subsidy Plan Agreement (TAS Agreement); (3) the related Agent's Contract; and (4) the Partner's Employment Agreement. (Dkt. No. 26.) The Introductory Contract, TAS Agreement, and Agent's Contract contain identical arbitration provisions (hereafter the "Arbitration Agreement(s)"):

> 21. **Arbitration.**
>
> (a) The Agent and the Company (which includes the Company, NYLIFE Securities LLC and their affiliates, successors, employees and agents) agree that any dispute, claim, request for equitable relief, or controversy arising between them, including but not limited to those alleging wrongful or unlawful discharge, or employment discrimination or harassment based on sex, race, age, disability, or status in any other group or class, or retaliation, in violation of any federal, state or local statute, regulation, common law or rule (hereinafter "the Claim"), as well as any dispute as to whether such Claim is arbitrable, shall be resolved by a final and binding arbitration proceeding, conducted in the Agent's state of residence and administered by the Financial Industry Regulatory Authority ("FINRA") in accordance with its applicable arbitration rules ("FINRA's arbitration rules") then in effect. These rules may be found at www.finra.org.
>
> (b) The following disputes and claims are not covered by this Agreement and shall therefore be resolved in any appropriate forum as required by the laws then in effect: (1) claims for workers' compensation benefits (except for claims of retaliation or discrimination), unemployment insurance, or state or federal disability insurance; (2) claims for benefits or breach of fiduciary duty arising under or relating to a plan that is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"); (3) matters within the jurisdiction of the National Labor Relations Board; (4) representative claims brought under a state private attorneys general act; and (5) any other dispute or claim that has been excluded from arbitration by applicable law that is not preempted by the Federal Arbitration Act.
>
> (c) In the event that a Claim is not arbitrable under FINRA's arbitration rules, or FINRA refuses to arbitrate the Claim, the Agent and the Company agree that the Claim, as well as any dispute as to whether such Claim is arbitrable, shall be resolved by a sole arbitrator in a final and binding arbitration proceeding, conducted in the Agent's state of residence and administered by the American Arbitration Association (hereinafter "AAA") in accordance with its rules for the resolution of employment disputes then in effect. These rules may be found at www.adr.org.
>
> (d) The Agent and the Company agree that no Claim may be initiated or maintained on a class action, collective action or representative action basis either in court or arbitration. All Claims must be brought in a party's individual capacity, and not as a plaintiff or class representative or class member or otherwise on behalf of others in any purported class, collective, or representative proceeding such that the Agent may not be a plaintiff, class representative or class member in any action against New York Life. The Agent and the Company further agree that if, for any reason, the waiver of any ability to initiate or maintain a claim as a class, collective or representative action or to participate in such action as a class member is found to be unenforceable or invalid, then any such class, collective or representative action or Claim shall be litigated and decided in a court of competent jurisdiction, and not in arbitration. Any issue concerning the enforceability or validity of the waiver must be decided by a court, and not by an arbitrator.
>
> (e) Claims may not be joined or consolidated in arbitration with claims brought by other individuals, and no damages or penalties may be sought or recovered on behalf of other individuals, unless agreed to in writing by all parties. The parties agree that in the arbitration of any claims between



United States District Court
Northern District of California

> them, the arbitrator will be required to resolve the dispute based the applicable law and the facts presented as a matter of record. Neither party will request, nor will the arbitrator be permitted, to treat as binding or preclusive any decision or ruling by a different arbitrator resulting from a dispute between the Company and any other Agent or person.
>
> (f) Exclusive of Claims alleging employment discrimination, including employment discrimination or harassment based on sex, race, age, disability, or status in any other group or class, or retaliation, in violation of any federal, state or local statute, regulation or rule, or alleging a violation of a federal, state or local wage and hour statute, regulation or rule, or any other Claims as to which the Company is required under applicable law to bear the costs and expenses of the arbitrator(s) and/or any other type of cost or expense that the Agent would not be required to bear if the Claims were brought in court, the costs and expenses of the arbitrator or arbitrators for any arbitration shall, to the extent permitted by FINRA or AAA's rules, be split evenly between the Agent and the Company.

(*See, e.g.*, Dkt. No. 26-1 at 18 (Introductory Contract at ¶ 21); Dkt. No. 26-1 at 27 (TAS Agreement at ¶ 19); Dkt. No. 32-1 at 17-18 (Agent's Contract at ¶ 24).) The Partner Agreement which Plaintiff Corcuchia signed contains substantially the same provision. (Dkt. No. 26-1 at 115-116 (Partner Agreement at ¶ 6).)

Plaintiffs do not dispute they signed the at-issue agreements containing the Arbitration Agreements, but they originally insisted Defendants had not supplied necessary evidence of contract formation as to Plaintiffs Brown, Moore, Sandoval, Valdez, or Sciara. (Dkt. Nos. 29-1 at ¶¶ 7-8; Dkt. No. 29-2 at ¶¶ 3-5; Dkt. No. 29-3 at ¶¶ 4-5; Dkt. No. 29-4 at ¶¶ 4-5; Dkt. No. 29-5 at ¶ 3; Dkt. No. 29-6 at ¶¶ 3-5.) In particular, Plaintiffs contended—and Defendants did not dispute—the TAS Agreement states: "This Agreement is not effective until both it and the Agent's Contract are duly signed by the Agent, approved by New York Life's Home Office, and respective Countersignature Pages are issued, signed and countersigned by New York Life's duly authorized representatives and specifying the Effective Dates thereof." (*See, e.g.*, Dkt. No. 26-1 at 28.) Defendants did not attach evidence of the countersigned agreements with their motion to compel arbitration. Defendants also did not attach evidence of the Agent's Contracts for Plaintiffs Brown, Moore, Sandoval, or Valdez.

After Plaintiffs' opposition brief raised these issues, Defendants offered the missing evidence in an errata filed two days before their reply and in a declaration attached to their reply. (Dkt. Nos. 31-1; 32-1.) Plaintiffs objected to Defendants' untimely submission of this evidence. (Dkt. No. 34.) The Court ordered the parties to meet and confer to discuss whether the evidence Defendants produced resolved the disputes regarding contract formation as to Plaintiffs Brown,



United States District Court
Northern District of California

Moore, Sandoval, Valdez, and Sciara and granted Plaintiffs leave to file a sur-reply if any disputes remained. (Dkt. No. 38.) Following the parties' meet and confer, Plaintiffs no longer contend Defendants have not demonstrated valid agreements as to Sandoval, Valdez, and Sciara, but Plaintiffs continue to dispute contract formation as to Brown and Moore.[2] (Dkt. No. 40 at 4.) Plaintiffs also filed a sur-reply. (Dkt. No. 39.)

**DISCUSSION**

The Federal Arbitration Act ("FAA") provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted). In resolving a motion to compel arbitration under the FAA, a court's inquiry is limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quotation marks omitted). "If both conditions are met, the FAA requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* (cleaned up).

There is no dispute either that the FAA governs, or under the second gateway inquiry, that the Arbitration Agreement encompasses the dispute at issue. Rather, the parties' disagreement arises out of the first gateway issue—the existence of a valid agreement to arbitrate. Plaintiffs insist Defendants have failed to demonstrate a valid agreement as to Brown and Moore, and regardless of any agreement, the Arbitration Agreements cannot be enforced because they are unconscionable. Plaintiffs also insist Defendants cannot compel arbitration based on Corcuchia's Partner Agreement and have otherwise waived the right to compel arbitration as to Corcuchia.

**A. Brown and Moore Contract Formation**

The existence of an arbitration agreement is a question for the Court, not an arbitrator. *See*

---

[2] To the extent Plaintiffs "maintain the positions" in their briefing and "preserve their evidentiary objections," the Court overrules the evidentiary objection to Defendants' late-filed evidence because the Court provided Plaintiffs the opportunity to request additional information from Defendants and file a sur-reply. (Dkt. No. 34; Dkt. No. 38 at 2; Dkt. No. 40 at 4.)



United States District Court
Northern District of California

*Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014). As the party seeking to compel arbitration, Defendants bear the burden of proving the existence of an agreement to arbitrate. *Johnson v. Walmart Inc*., 57 F.4th 677, 681 (9th Cir. 2023). When, as here, "the making of the arbitration agreement" is at issue, the summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc*., 1 F.4th 667, 670 (9th Cir. 2021) (quoting 9 U.S.C. § 4). To prevail under the summary judgment standard, Defendants must show there is no genuine issue as to any material fact regarding formation of the arbitration contract. *Id*.; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Conversely, to deny the motion to compel arbitration, rather than hold a trial on arbitration agreement formation, the Court must find no reasonable trier of fact could find an agreement was made. *Hansen*, 1 F.4th at 670 ("once a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved"). In evaluating the record, the Court must "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Oberstein v. Live Nation Ent., Inc*., 60 F.4th 505, 517 (9th Cir. 2023).

"In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849, 855 (9th Cir. 2022). "Federal courts look to state law contract principles to determine the validity of an arbitration agreement." *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). "Generally, under California law, the essential elements for a contract are (1) 'parties capable of contracting'; (2) 'their consent;' (3) 'a lawful object;' and (4) 'sufficient cause or consideration.'" *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (quoting *United States ex rel. Oliver v. Parsons Co*., 195 F.3d 457, 462 (9th Cir. 1999)) (internal brackets omitted).

**1. TAS Agreement and Agent's Contract**

Defendants move to compel Moore and Brown based on the arbitration provisions in their respective TAS Agreements and Agent's Contracts. While there is no dispute these agreements were signed, there is a dispute as to whether the agreements were formed. The TAS Agreements

state under Moore and Brown's respective signatures:

> **This Agreement is not effective until both it and the Agent's Contract are duly signed by the Agent, approved by New York Life's Home Office, and respective Countersignature Pages are issued, signed and countersigned by New York Life's duly authorized representatives *and specifying the Effective Dates thereof*.**

(Dkt. No. 26-1, Exs. B, D at ECF 28, 47 (italics emphasis added).) The Agent's Contracts contain the same language. (Dkt. No. 32-1, Exs. L, M at ECF 24, 46.) Plaintiffs insist the agreements were never effective because neither the TAS Agreement nor Agent's Contract specify the Effective Date; instead, the space for "Effective Date" on each is left blank. Indeed, Defendants themselves attest under oath that before the contract becomes effective, "an authorized representative of New York Life must countersign the contract, *indicating the effective date*." (Dkt. No. 32-1 ¶ 18 (emphasis added).) It is undisputed that for Moore and Brown, neither the TAS Agreement nor the Agent's Contract specifies the Effective Date. (Dkt. No. 31-1 at 31 (Brown TAS Agreement countersignature page); Dkt. No. 32-1 at 29 (Brown Agent's Contract countersignature page).) Defendants' declarant states: "As this [Agent's Contract] countersignature page indicates, Brown's Agent's Contract became effective on April 8, 2025." (Dkt. No. 32-1 at ¶ 18.) But that statement is wrong. There is **no** date on the countersignature page, including next to the space for "Effective Date of Contract." The same is true for Moore's TAS Agreement and Agent Contract. (Dkt. No. 31-1 at 52 (Moore TAS Agreement countersignature page); Dkt. No. 32-1 at 51 (Moore Agent's Contract countersignature page).) So, based on the very terms Defendants drafted and insisted upon, neither the TAS Agreement nor the Agent's Contract ever became effective.

Defendants cite *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610 (N.D. Cal. 2019) and *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165 (2015), to support their insistence a contract was formed and became effective notwithstanding the missing required Effective Date. But these cases address contracts with missing signatures; they do not address a contract which expressly states it will not be effective unless the contract states the effective date. While *Chun Ping Turng* included an express requirement that the contract would not be effective



United States District Court
Northern District of California

without a certain signature, the court found the contract had the required signature. 371 F. Supp. 3d at 622.

Plaintiffs cite *Int'l Bhd. Of Teamsters v. NASA Servs. Inc.*, 957 F.3d 1038 (9th Cir. 2020), for the proposition that because the TAS Agreement made the specification of the "Effective Date" a condition precedent, and the TAS Agreements did not specify an Effective Date, they never became effective as a matter of law. There the court explained contract conditions precedent.

> There are two species of conditions precedent: conditions precedent to formation and conditions precedent to performance. Essentially, "[w]here a condition precedent to formation is not satisfied, the proposed bargain between the parties does not become a binding contract." Indeed, "[e]ven where the contract is complete and signed, it may be shown that the parties orally agreed that it should not become binding until the happening of some event." Conversely, if a condition precedent to performance fails, the parties still have a contract, but they lose the right to enforce at least some of its terms. Courts will neither infer nor construe a condition precedent "absen[t] ... language plainly requiring such construction." Conditions precedent must be expressed in plain, clear, and unambiguous language, but parties need not invoke any "required magical incantation."

*Id.* at 1043. The Ninth Circuit held the contract had a condition precedent; namely, the contract would be "operative" only if the City of Los Angeles entered into an exclusive franchise agreement with NASA by a date certain. *Id.* at 1044-45. Further, that condition precedent applied to *formation*: "[g]iven that the 'Agreement' itself—and not merely any particular obligations to perform under it—'shall only become operative' if Paragraph 15's conditions are satisfied" this language constituted "a condition precedent to formation." *Id.* at 1044. Likewise, here, the TAS Agreements include a condition precedent: they will not be effective, that is, operative, unless and until Defendants specify the effective date. This condition is to the entire TAS Agreement itself, and not merely any particular obligation to perform; so, under *Teamsters*, it is an unsatisfied condition precedent to formation.

Although Plaintiffs cited *Teamsters* in their Opposition (Dkt. No. 29 at 16), Defendants do not address it in their Reply. It may be there is an argument as to why this particular unsatisfied and technical condition precedent does not apply. But, on this record the Court can say as a matter

of law that it does not defeat contract formation.

**2. Introductory Contract**

In the alternative, Defendants argue Moore and Brown should be compelled to arbitrate under the Introductory Contract as there is no dispute as to that contract's formation and it includes a similar arbitration provision. (Dkt. No. 31-1 ¶ 21 at 19.) Indeed, while the Introductory Contract states it is not effective until it is countersigned and specifies the Effective Date, the Effective Date is specified. (Dkt. No. 31-1 at 22 (Brown); Dkt. No. 31-1 at 43 (Moore).) So, it is undisputed Moore and Brown agreed to the arbitration provision in the Introductory Contract. And the Introductory Contract arbitration provision, like the TAS Agreement and Agent's Contract, broadly covers "any dispute" arising between Plaintiffs and Defendants, with exceptions not relevant here. Further, although it is undisputed the Introductory Contract itself had expired by the time the dispute at issue here arose, and that Moore and Brown were instead employed pursuant to the TAS Agreement, the arbitration provision specifically states the arbitration requirement "shall survive termination of the contract by either party." (Dkt. No. 31-1 at 20.)

Plaintiffs argue that because Moore and Brown moved on from the Introductory Contract to the TAS Agreement which contained its own arbitration provision, the Introductory Contract's arbitration provision cannot apply. Plaintiffs' argument might have some force if the Introductory Contract's arbitration provision stated it applied to disputes arising under the Introductory Contract, but it is not so limited. Instead, based upon its plain language, it applies to disputes that arise between the parties. Full stop. *See Johnson v. Walmart Inc.*, 57 F.4th 677, 682 (9th Cir. 2023) ("courts interpret contracts containing arbitration provisions by application of the plain meaning rule—words of a contract are given their usual and ordinary meaning.").

The cases upon which Plaintiffs rely do not suggest otherwise. In *Juarez v. Social Finance, Inc.*, 2021 WL 1375868 *5 (N.D. Cal. Apr. 12, 2021), the court held that based on the arbitration provision's plain language, its scope was expressly limited to the plaintiff's 2016 online mortgage application and did not apply to subsequent applications. Here, in contrast, there is nothing in the language of the Introductory Contract's arbitration provision that limits its scope to disputes between the parties arising while the employee is working under the Introductory

Contract. *Johnson v. Walmart, Inc.,* 57 F.4th 677, is similarly unhelpful to Plaintiffs. There, the court held the terms of use containing the arbitration provision were expressly limited to the consumer plaintiff's use of Walmart's online sites and thus did not apply to the consumer plaintiff's brick and mortar tire service purchase. "By the plain meaning of the introductory language, no provision of the Terms of Use can govern Johnson's in-store purchase because that purchase did not involve his access to or use of any Walmart Site." *Id.* at 682. Notwithstanding that plain language, Walmart tried to argue the in-store tire service was part of the same transaction as the online tire purchase and so should be governed by the same terms of use. The Ninth Circuit rejected that argument. *Id.* at 683. The circumstances here are the opposite. The plain language of the Introductory Contract arbitration provision applies to this dispute.

***

Accordingly, the Court concludes Defendants have met their burden of demonstrating contract formation as to all Plaintiffs and turns to whether the Arbitration Agreements are nonetheless invalid because they are unconscionable.

**B. Unconscionability**

Under the FAA, an arbitration agreement is invalid when it is unenforceable under "generally applicable contract defenses" recognized by state law, such as "unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up). "The party resisting enforcement of an arbitration agreement has the burden to establish unconscionability." *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 492 (2024). Under California law, a plaintiff seeking to invalidate a contractual provision as unconscionable must prove both procedural and substantive unconscionability. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).

**1. Procedural Unconscionability**

Procedural unconscionability "focus[es] on oppression or surprise due to unequal bargaining power." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013). "[T]he threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (cleaned up). A

"take-it-or-leave it" agreement without an opportunity to opt out of arbitration is adhesive. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023); *see also Mohamed*, 848 F.3d at 1211 ("[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it.") Although adhesion "establish[es] some degree of procedural unconscionability," it does not make an agreement "per se unconscionable." *Lim v. TForce Logistics, LLC,* 8 F.4th 992, 1000-01 (9th Cir. 2021) (quotation marks and citation omitted). Other factors relevant to establishing procedural unconscionability include:

> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126-27 (2019) (quotation marks and citation omitted).

Defendants do not dispute the Arbitration Agreements were a condition of Plaintiffs' employment. (Dkt. No. 32 at 11.) Because the Agreements did not include an opt out option, they are adhesive and therefore procedurally unconscionable to some degree. Plaintiffs raise two other arguments as to procedural unconscionability. First, Plaintiffs contend the Arbitration Agreement is unclear as to which of two arbitral forums—FINRA or AAA—apply and which forum's rules apply. Not so. The Agreement states FINRA is the forum unless the FINRA rules (which are linked and incorporated by reference) state the claim is not arbitrable under its rules or FINRA refuses to arbitrate in which case AAA is the forum and its rules (also linked and incorporated by reference) apply. (*See, e.g.*, Dkt. No. 26-1 at 18.) *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017) (failure to attach rules and instead incorporating them by reference does not support procedural unconscionability).

Plaintiffs' second argument is more availing. Plaintiffs insist the cost sharing provision in Corcuchia's Partner Employment Agreement adds uncertainty as to who bears the costs. (Dkt. No. 31-1, Ex. K at ¶ 5(g) at ECF 128.) Under *Armendariz* "the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 24

Cal. 4th at 110.The provision at issue here provides the costs and expenses will be split between the Partner and New York Life unless, among other things, it is for a claim "as to which New York Life is required under applicable law to bear the costs and expenses of the arbitrator(s)." (Dkt. No. 31-1, Ex. K at ¶ 5(g) at ECF 128.) Defendants contend this provision is consistent with *Armendariz* and thus not procedurally unconscionable.

In *Ronderos v. USF Reddaway, Inc*., 114 F.4th 1080, 1092 (9th Cir. 2024), the Ninth Circuit found a provision which required the parties to equally share the cost of arbitration and arbitrator fees, "unless other express statutory provisions or controlling case law conflict with this allocation and require the payment of costs and fees by the Company" was unconscionable. *Id*. at 1088. Like Defendants here, the employer in *Ronderos* had argued the clause was permissible because it tracked *Armendariz*. The Ninth Circuit rejected this argument concluding the clause contained an element of surprise because it "indicates only that the cost-splitting requirement will not apply *if* it conflicts with a statute or case law, without specifying that California law will control and without acknowledging that a conflict with California law actually exists." *Id*. at 1092 (emphasis in original). The ambiguity in the cost sharing provision here likewise gives rise to some procedural unconscionability. *Id*. at 1091 ("The cost-splitting provision creates the impression that Ronderos must pay half the costs of arbitration and arbitrator fees, even though under California law, an employer may not require employees to pay such arbitration costs in an adhesive arbitration contract.").

Accordingly, given the adhesive nature of the contract and potential for surprise regarding the cost sharing provision (as to Plaintiff Corcuchia only), Plaintiffs have established some degree of procedural unconscionability.

**2. Substantive Unconscionability**

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." *Id*. (quotation marks and citation omitted). "The paramount



United States District Court
Northern District of California

United States District Court
Northern District of California

consideration in assessing conscionability is mutuality." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (cleaned up). "[U]nconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." *Armendariz*, 24 Cal. 4th at 118.

**a. FINRA Written Decision Rule**

Plaintiffs contend the FINRA rules fail to guarantee "a written decision stating the essential findings and conclusions supporting the award." (Dkt. No. 29 at 24.) FINRA Rule 13904 states, in relevant part:

> (a) All awards shall be in writing and signed by a majority of the arbitrators or as required by applicable law. Such awards may be entered as a judgment in any court of competent jurisdiction.
>
> (b) Unless the applicable law directs otherwise, all awards rendered under the Code are final and are not subject to review or appeal.
>
> (c) The Director will serve the award on each party, or the representative of the party.
>
> (d) The panel shall endeavor to render an award within 30 business days from the date the record is closed.
>
> (e) The award shall contain the following:
> (1) The names of the parties;
> (2) The name of the parties' representatives, if any;
> (3) An acknowledgement by the arbitrators that they have each read the pleadings and other materials filed by the parties;
> (4) A summary of the issues, including the type(s) of any security or product, in controversy;
> (5) The damages and other relief requested;
> (6) The damages and other relief awarded;
> (7) A statement of any other issues resolved;
> (8) The allocation of forum fees and any other fees allocable by the panel;
> (9) The names of the arbitrators;
> (10) The dates the claim was filed and the award rendered;
> (11) The number and dates of hearing sessions;
> (12) The location of the hearings; and
> (13) The signatures of the arbitrators.
>
> (f) The award may contain a rationale underlying the award.

FINRA Rule 13904, *see* https://www.finra.org/rules-guidance/rulebooks/finra-rules/13904 (last visited Nov. 16, 2026). Rule 13904(g) states the parties can jointly request "an explained decision" which "is a fact-based award stating the general reason(s) for the arbitrators' decision. Inclusion of

legal authorities and damage calculations is not required." *Id.*

Generally, to avoid a finding of unconscionability, the rules may require an arbitrator to "issue a written arbitration decision that will reveal, however briefly, the essential findings and conclusions on which the award is based." *Armendariz*, 24 Cal. 4th at 107 (rejecting unconscionability finding where the at-issue rules did not require written findings because the rules did not preclude written finings "the agreement must be interpreted to provide for such findings."). Rule 13904(e) states certain information must be included in the decision and subsection (g) states the parties can jointly request an explained decision. *See McManus v. CIBC World Markets Corp*., 109 Cal. App. 4th 76, 100 (2003) (concluding NASD rules regarding written decisions which are substantially the same as the FINRA rules did not render the arbitration agreement substantively unconscionable). At oral argument, Plaintiffs conceded that under *McManus* the FINRA written decision rules are not substantively unconscionable under California law.

**b. FINRA Discovery Rules**

Next, Plaintiffs insist FINRA's default discovery rules do not guarantee adequate discovery. In an arbitration agreement required as a condition for employment, employees "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator." *Armendariz*, 24 Cal. 4th at 106. In *Ramirez v. Charter Commc'ns, Inc*., the California Supreme Court held courts should look at the following factors when assessing whether a discovery clause is unconscionable: "types of claims covered by the agreement, the amount of discovery allowed, the degree to which that amount may differ from the amount available in conventional litigation, any asymmetries between the parties with regard to discovery, and the arbitrator's authority to order additional discovery." 16 Cal. 5th 478, 506 (2024). The court concluded "giving the arbitrator authority to expand discovery based on *Armendariz's* requirement is one way the adequacy concern can be addressed." *Id*.

The FINRA rules Plaintiffs challenge include several discovery provisions. Rule 13506 allows parties to "request documents or information from any party by serving a written request on

the party," but requests "are generally limited to identification of individuals, entities, and time periods related to the dispute," not "standard interrogatories," and "should be reasonable in number and not require narrative answers or fact finding." FINRA Rule 13506(a), *see* https://www.finra.org/rules-guidance/rulebooks/finra-rules/13506 (last visited Nov. 16, 2026). Under Rule 13508(c), in "rulings on objections, arbitrators may consider the relevance of documents or discovery requests and the relevant costs and burdens to parties to produce this information." FINRA Rule 13508(c), *see* https://www.finra.org/rules-guidance/rulebooks/finra-rules/13508 (last visited Nov. 16, 2026). The rules allow a party to move to compel discovery if another side does not comply or objects to discovery requests. FINRA Rule 13509(a), *see* https://www.finra.org/rules-guidance/rulebooks/finra-rules/13509 (last visited Nov. 16, 2026). While depositions "are strongly discouraged" the panel may permit depositions "under very limited circumstances," such as:

> (a) To preserve the testimony of ill or dying witnesses;
> (b) To accommodate essential witnesses who are unable or unwilling to travel long distances for a hearing and may not otherwise be required to participate in the hearing;
> (c) To expedite large or complex cases;
> (d) In cases involving claims of sexual assault, sexual harassment, or statutory employment discrimination, if necessary and consistent with the expedited nature of arbitration; and
> (e) If the panel determines that extraordinary circumstances exist.

FINRA Rule 13510, *see* https://www.finra.org/rules-guidance/rulebooks/finra-rules/13510 (last visited Nov. 16, 2026). Finally, arbitrators "have the authority to issue subpoenas for the production of documents or the appearance of witnesses." FINRA Rule 13512(a)(1), *see* https://www.finra.org/rules-guidance/rulebooks/finra-rules/13512 (last visited Nov. 16, 2026).

While these rules may be more circumscribed than the federal rules, that does not mean they are unconscionable. *See Armendariz*, supra, 24 Cal.4th at pp. 105−106 (holding parties to an arbitration clause can agree "to something less than the full panoply of discovery provided" in the rule as long as the discovery is "adequate" "for the vindication of [the] claims"); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (rejecting argument NYSE arbitration discovery "procedures might not be as extensive as in the federal courts [because] by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the

simplicity, informality, and expedition of arbitration.'")[3]; *McManus*, 109 Cal. App. 4th at 97–98 (describing the discovery procedures under NASD and NYSE as "extensive" because they "provid[e] for document production, information exchanges, and subpoenas.").

While Plaintiffs take issue with FINRA limitations on discovery in the abstract, they have not made any showing as to *how* the rules are unfair to them. At most, Plaintiffs have identified discovery they contend is necessary, including "compensation ledgers, training and supervision evidence, classification decisions, and testimony from managers and corporate representatives," but they have not shown how the FINRA rules would prevent them from obtaining this information. (Dkt. No. 29 at 23.) Rule 13506 allows parties to request documents and poses no limit on the amount of requests for information or documents. *See, e.g., Maher v. Wells Fargo Clearing Servs., LLC*, No. 23-CV-01015 FWS JDE, 2023 WL 11053622, at *9 (C.D. Cal. Dec. 12, 2023) (concluding the plaintiffs had not "sufficiently demonstrate that a FINRA arbitration [particularly the discovery rules] would be unreasonably favorable to Defendants."); *Morgal v. Ameriprise Fin. Servs. LLC*, No. CV-26-00654-PHX-DJH, 2026 WL 2211922, at *2 (D. Ariz. July 31, 2026) (concluding the FINRA rules "ha[ve] a more streamlined and limited process for discovery than a federal court" but "a party is not entitled to 'unfettered discovery' or discovery on the same footing as a federal court"). Further, the FINRA discovery rules provide the arbitrator with authority to expand discovery—particularly depositions. *See, e.g.*, FINRA Rule 13510; *see also McManus*, 109 Cal. App. 4th at 98 ("under the NASD and NYSE rules, an arbitrator retains broad powers to resolve prehearing disclosure disputes including directing production of documents, issuance of subpoenas, and appearances of witnesses.").

Accordingly, Plaintiffs have not met their burden of demonstrating the FINRA discovery rules are substantively unconscionable.

**c. Reimbursement Rule**

Finally, Plaintiffs insist Brown, Moore, Sandoval, and Valdez's Introductory Contracts and Sciara's Agent's Contract contain an attorney-fee reimbursement provision that is substantively

[3] The NYSE rules are "essentially identical" to the NASD rules. *Parr v. Superior Ct.*, 139 Cal. App. 3d 440, 446 (1983); see also



United States District Court
Northern District of California

unconscionable. (Dkt. No. 29 at 20-21.) The Introductory Contracts Brown, Moore, Sandoval, and Valdez signed provide:

> To the fullest extent allowed by law, the Agent agrees to reimburse the Company for all attorney's fees, costs, expenses, losses, damages and liability of every kind which the Company may at any time incur or pay on account of: (a) Any claim arising from or related to any misconduct, error, act or omission, or other unauthorized act by the Agent… (b) Any breach by the Agent of any terms or provisions of this contract or any of the Company's procedures, rules or guidelines…

(Dkt. No. 26-1, Exs. A, C, E, I at § 7.) Sciara's Agent Contract contains similar language. (*Id.*, Ex. H at § 14.) Plaintiffs argue these provisions are unilateral and could apply to the claims here. Defendants insist these provisions are immaterial because *Rent–A–Center* directs courts to decide challenges to the validity of an agreement to arbitrate without reference to the larger contract. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("That is because § 2 states that a written provision to settle by arbitration a controversy is valid, irrevocable, and enforceable without mention of the validity of the contract in which it is contained.") (cleaned up). "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate" because "arbitration provision is severable from the remainder of the contract." *Id.* (cleaned up). Thus, the Court need not resolve the conscionability of these terms and can instead sever these clauses from the rest of the contract. *See Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168, 1179 (9th Cir. 2026) (concluding the court did not need to address whether [the PAGE or public injunctive relief] waiver[s] rise[] to the level of substantive unconscionability" because the provisions were severable).

Under California law, the first step of the severance analysis is to assess whether "the central purpose of the contract is tainted with illegality." *Ramirez v. Charter Commc'ns, Inc., 16 Cal. 5th 478, 515 (2024)* (quoting *Armendariz*, 99 Cal.Rptr.2d 745). If not, the court should ask "whether the contract's unconscionability can be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary." *Id.* If no augmentation is required, severance is preferred but the court should determine whether "severance of the unconscionable terms would function to condone an illegal scheme" adopted in a "systematic



United States District Court
Northern District of California

effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage." *Id*. "If the contract contains a severance clause, the court should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced." *Id*. at 517.

Plaintiffs do not dispute the Agent's Contracts and Partner's Agreement contain severability clauses. (Dkt. No. 29 at 26; Dkt. No. 39 at 7.) While the Introductory Contracts that compel arbitration as to Brown and Moore do not have severance clauses, this is not dispositive. *Ramirez*, 16 Cal. 5th at 517 ("courts may liberally sever any unconscionable portion of a contract and enforce the rest when: the illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; and enforcing the balance of the contract would be in the interests of justice."). Plaintiffs do not contend the contracts as a whole are "so tainted with illegality that there is no lawful object of the contract to enforce." *Poublon v. C.H. Robinson Co*., 846 F.3d 1251, 1273 (9th Cir. 2017). Indeed, at oral argument, Plaintiffs conceded the Court must sever these clauses if it is inclined to enforce the contracts. Accordingly, the Court severs the at-issue reimbursement clauses.

* * *

Since the Court can sever the reimbursement provisions as discussed above, Plaintiffs have not shown the Arbitration Agreements are unconscionable.

**C. Additional Arguments as to Corcuchia**

Plaintiffs make two additional arguments as to Plaintiff Corcuchia: (1) Defendant cannot move to compel arbitration under his 2017 Partner Agreement; and (2) Defendants have waived their right to compel arbitration as to Plaintiff Corcuchia's claims because they previously filed a debt collection action against Corcuchia in state court. Neither argument is availing.

First, there is no dispute Corcuchia executed a Partner's Agreement with Defendants in 2017 and this agreement contains an Arbitration Clause. (Dkt. No. 26-1 at 115-116, Partner Agreement at ¶ 6.) In March 2022, Corcuchia ceased working as a partner and began working as an agent under a TAS Agreement. (Dkt. No. 3 at ¶ 21.) Defendants move to compel arbitration under the 2017 Partner Agreement. (Dkt. No. 26 at 12-13.) Plaintiffs object, arguing the Partner

United States District Court
Northern District of California

Agreement does not govern Corcuchia's post-partner relationship. (Dkt. No. 29 at 17.) However, like the Introductory Contract, the Partner Agreement specifically states the Arbitration Agreement "survives termination of the Partner's Employment Agreement by either party." (Dkt. No. 26-1 at 118.) *Johnson v. Walmart Inc*, on which Plaintiffs rely, is inapposite for the reasons explained earlier. *See supra* at Section A(2). Here, as with the Introductory Contract arbitration provision, Defendants move to compel arbitration under an arbitration clause that governs any claim—regardless of when it accrued—between Corcuchia and Defendants arising under a violation of any federal, state, or local statute. (Dkt. No. 26-1 at 115, 118.)

Second, Plaintiffs, as the party asserting waiver, must show: "(1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). There is no "concrete test" for waiver; rather, the court "ask whether those actions holistically indicate a conscious decision ... to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate." *Id.* at 1015 (cleaned up). "[A] party generally "acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Id.*

"Where, as here, a party has brought one suit on certain claims and subsequently seeks to arbitrate other claims in a separate lawsuit, courts have consistently found no waiver exists." *Izett v. Crown Asset Mgmt., LLC*, No. 18-CV-05224-EMC, 2019 WL 4845575, at *10 (N.D. Cal. Oct. 1, 2019) (collecting cases). The earlier filed case involved entirely separate claims seeking to recover a debt—Defendants have not acted inconsistently with the right to arbitrate by moving to compel arbitration in new case involving different claims. *Id.* (declining to find waiver where "the claim litigated by Defendants in the State Court Action for recovery of debt involved a *separate* lawsuit and is distinct from this suit brought by Plaintiff under the FDCPA and RFDCPA."). Accordingly, Plaintiffs have not demonstrated Defendants waived their right to compel arbitration as to Plaintiff Corcuchia.

**D. Class Action Waiver**

Finally, Defendants request dismissal of Plaintiffs' putative class claims based on the class action waiver in the Arbitration Agreements. The Arbitration Agreements state in relevant part:

> The Agent and the Company agree that no Claim may be initiated or maintained on a class action, collective action or representative action basis either in court or arbitration. All Claims must be brought in a party's individual capacity, and not as a plaintiff or class representative or class member or otherwise on behalf of others in any purported class, collective, or representative proceeding such that the Agent may not be a plaintiff, class representative or class member in any action against New York Life.

(*See, e.g.*, Dkt. No. 26-1, Ex. A at § 21(d).)

Under the FAA, courts must enforce class action waivers. *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 524-25 (2018); *see also Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 658-69 (2022). Plaintiffs do not argue otherwise and instead reiterate their argument that Defendants have not shown valid Arbitration Agreements between the parties. Because the Court rejects this argument as discussed above, the class action waivers must be enforced, and Plaintiffs' putative class claims are dismissed.

**CONCLUSION**

Because Defendants have established as a matter of law a valid Arbitration Agreement exists as to each Plaintiff, and Plaintiffs have not established the Agreements are unconscionable other than the reimbursement provision which the Court severs, the Court GRANTS Defendants' motion to compel arbitration of Plaintiffs' claims; dismisses Plaintiffs' putative class claims; and stays the case pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 474, 476-78 (2024) (requiring stay pending arbitration). On or before November 5, 2027, the parties shall jointly provide a written update on the status of arbitration.

This Order disposes of Docket No. 26.

**IT IS SO ORDERED.**

Dated: November 24, 2026

Jacqueline Scott Corley

JACQUELINE SCOTT CORLEY
United States District Judge